[No. 28140. *En Banc.* October 22, 1940.]

WILLIAM SODDEN, *Appellant,* v. WILLIAM B. REINHARDT, *as Executor, Respondent.*[1]

*Whittemore & Truscott,* for appellant.

*Wright & Wright,* for respondent.

BEALS, J.—At about ten minutes after six o'clock on the evening of Saturday, October 14, 1939, plaintiff, William Sodden, was backing his truck and trailer onto Bothell way from a grease rack at Boudreau service station, located on the southwest corner of Bothell way and One Hundred Forty-third street, Se-

[1]Reported in 106 P. (2d) 574.

attle. Bothell way at that point runs approximately north and south, and is straight for a distance of a quarter of a mile in each direction.

Plaintiff's appliance is accurately described as a Chevrolet tractor and semi-trailer, thirty-seven feet in length over all. The trailer had no front wheels, but rested upon a fifth wheel upon the bed of the tractor. The trailer stood three feet above the ground, was twenty-seven feet long, and weighed three and one-half tons. The trailer carried two tail lights, which would not be visible from the north as the trailer backed into the street at right angles, and carried also on each side, near its back corner, one two-way red and amber light, with the red to the rear, one amber light near the middle, and one amber light near the front corner, all of which were shining. It also carried an amber reflector near its rear corner.

Plaintiff backed his truck and trailer slowly onto the highway, which at this point consisted of a four-lane concrete pavement forty-four feet wide, on each side of which was a black top shoulder eight feet in width. The westerly paved lane for southbound traffic was ten feet in width, the next southbound lane being ten feet seven inches wide, the lanes being designated by yellow lines. Two yellow lines two feet apart indicated the center of the highway.

Plaintiff had backed his truck and trailer out of the service station premises, the trailer having proceeded at a right angle onto the highway to a point where the rear end of the trailer was seven and one-half feet on the westerly lane of the highway, leaving clear thirteen feet of the two lanes for southbound traffic.

At this stage of the proceedings, several cars were approaching from the north. Three or four cars passed safely to the rear of the trailer, but a Buick sedan owned and driven by Archibald McVicar, which was

following the cars above mentioned, crashed into the side of the trailer. Mr. McVicar suffered injuries from which he later died, his car was seriously damaged, and plaintiff's trailer was also damaged.

Mr. Sodden instituted this action against Mr. Mc-Vicar, for the purpose of recovering damages which he claimed to have suffered. After the commencement of the action, Mr. McVicar died as the result of his injuries, and defendant, William B. Reinhardt, was in due time appointed executor of his will; whereupon plaintiff presented to the executor a claim for damages on account of the injuries to his trailer, claiming, as alleged in his complaint, that the accident was the result of Mr. McVicar's negligence. The executor was substituted as party defendant, and by his answer denied that Mr. McVicar had been negligent, pleaded affirmatively that plaintiff had been negligent, and by way of a cross-complaint, asked for judgment against plaintiff for damages in a considerable sum.

The action was tried to the court, sitting without a jury. The trial court held that the accident was the result of plaintiff's negligence, and signed findings of fact in defendant's favor, followed by conclusions of law to the effect that plaintiff was not entitled to recover, and that defendant was entitled to judgment against plaintiff in the sum of $1,937.85, together with costs. The damages allowed were made up of the following items: Hospital bills, $105.45; doctors' bills, $75; funeral expenses, $505; burial expenses, $152.40; damages to Mr. McVicar's automobile, $1,100. Judgment was later entered in accordance with the findings and conclusions, from which judgment plaintiff has appealed.

Appellant assigns error upon the finding of the trial court that he was negligent, and that his negligence was the sole and proximate cause of the collision and

the resulting injuries to Mr. McVicar and the damage to the latter's estate; and upon the finding that Mr. McVicar was not guilty of contributory negligence in the operation of his automobile. Error is also assigned upon the denial of appellant's motion for judgment in his favor notwithstanding the ruling of the court in respondent's favor; upon the denial of appellant's motion for a new trial; and upon the entry of judgment in favor of respondent upon his cross-complaint.

There is little, if any, dispute on the facts, and appellant relies upon the rule that on appeal from a judgment in a law case tried without a jury, this court will review the evidence. *Smith v. Seattle,* 178 Wash. 477, 35 P. (2d) 27. Appellant argues that the evidence preponderates against the findings of the trial court; and that, there being no substantial conflict in the evidence, this court should reverse the judgment and direct that judgment be entered in appellant's favor.

In addition to the above statement, the following facts should be noted: Boudreau service station, located as above set forth, handles Shell products, and in addition to the station, contains a building known as the grease rack, which stands south of the station building, a driveway leading therefrom to Bothell way. In addition to the ordinary lights, there is installed at the station a thousand-watt flood light on a pole about sixty feet north of the station building. Thus light is thrown to the south, lighting up both driveways as far away as the curb on Bothell way. The flood light does not shine on the pavement.

Appellant lives a little west and south of the service station, and on the evening of the accident, was intending to drive his truck and trailer from the station to his home. He could maneuver his vehicle out of the station only by backing onto Bothell way. It appears that, before commencing to back, appellant lowered

the window at his right hand, and turned on all the lights on his vehicle, including the headlights on the truck and the clearance lights and tail lights on the trailer. Mr. Boudreau also turned on the lights located on the covering between the station and the pumps and the flood light, which illuminated the driveways upon one of which the truck and trailer were standing. Mr. Boudreau then stepped onto the paved portion of the highway at a point between twenty and forty feet north of the truck for the purpose of signaling southbound traffic with a three-cell flash light. Appellant then commenced to back his equipment, stopping at intervals to allow traffic to pass. By this time, Mr. Boudreau was standing on the edge of the concrete pavement, waving his flash light to warn southbound traffic.

Mr. McVicar, driving south, was following the cars which successfully avoided the trailer. He was driving at a fair rate of speed, and not seeing the trailer, at least until too late to avoid it, collided therewith. By the force of the collision, the trailer was turned to a right angle to the truck and pushed off the pavement. Mr. McVicar's car came to a stop a short distance to the south. After the accident, Mr. McVicar said that he did not see appellant's equipment until just prior to the impact.

During the course of the trial, it was stipulated that appellant had regularly filed his claim with respondent executor, and that some of the items for which respondent demanded judgment were reasonable in amount, if appellant were held responsible for the accident. It is not here contended that any of the items of recovery allowed by the trial court were improper if the trial court was correct in holding appellant, and appellant alone, responsible for the accident.

In the first place, appellant contends that, under

all the circumstances, and taking into consideration the lights on the truck and trailer and the well lighted condition of the service station property, there was no negligence in appellant's proceeding to back his equipment onto the highway; and that, under all the circumstances, he was to no extent lacking in the exercise of ordinary care.

The trial court found that, in the operation of his equipment, appellant did not sound any horn, and that he placed no flares on the highway or along the side thereof, to warn traffic approaching along the highway of the dangerous situation created by the presence of his equipment across the same. The court also found that appellant was negligent in what he did, and that he violated both the statutory law and the rules of the road in entering upon and across the highway, and that his negligence was the sole proximate cause of the injury to Mr. McVicar and his automobile.

While it is doubtless true, as argued by appellant, that appellant could not remove his truck and trailer from the service station property save in the manner which he attempted to follow, it is also true that appellant's actions created a most dangerous situation and one likely to result in a collision and serious injury to persons and property. Mr. McVicar was driving along an arterial highway, and enjoyed the full benefit of the right of way accorded to him, under the circumstances. Appellant's trailer entered the highway not exactly at a street intersection, but some small distance south of the intersection. It was dark, the trailer was a low vehicle, and while it carried clearance lights, these were naturally not of any considerable brilliance. The driver of such equipment, under the circumstances of this case, owes to persons lawfully using the arterial the duty of exercising

great care to avoid danger to such persons. Appellant was not required to remove his truck after dark; the darkness added greatly to the danger.

Cases in which a car proceeding along a highway is compelled to stop because of a breakdown or similar happening are not here in point. The danger was created by appellant's deliberate act.

Under all the circumstances, the backing of the truck and trailer onto the highway created such a manifestly dangerous situation that the burden rested heavily upon appellant to see that no harm was done to persons traveling along the busy arterial highway.

It is true, as argued by appellant, that rights of way are not absolute, but relative, but this rule does not authorize such an unusual and dangerous course of conduct as that pursued by appellant.

While the station flood light was functioning, it must be remembered that this light did not illuminate the highway.

Rem. Rev. Stat., Vol. 7A, § 6360-35 [P. C. § 2696-772], reads in part as follows:

"Every motor vehicle shall be equipped with a suitable horn, which shall be sounded at any time when such vehicle is approaching a condition of danger or where in the exercise of due care warning should be made or at such times and under such conditions as required by law. . . ."

Rem. Rev. Stat., Vol. 7A, § 6360-91 [P. C. § 2696-849]: "It shall be the duty of every operator of a vehicle while backing such vehicle to look out for and yield the right of way to all other vehicles upon the public highway."

Rem. Rev. Stat., Vol. 7A, § 6360-92 [P. C. § 2696-850]: "It shall be unlawful for the operator of a vehicle to emerge from any alley, driveway, building exit, private way or private property or from off the roadway of any public highway, onto the roadway of any public highway or across a sidewalk or into the sidewalk

area extending across any such alley, driveway, building exit, private way or private·property without bringing such vehicle to a full stop and yielding the right of way to all pedestrians upon such sidewalk and all vehicles upon such public highway."

In consideration of the statutes and the law of the road and all the surrounding circumstances, it must be held that the trial court did not err in finding that appellant was guilty of negligence in backing his equipment onto the highway. This negligence was not excused by the fact that Mr. Boudreau was standing a few feet to the north, waving a flash light. That constituted an entirely insufficient warning of the dangerous situation which appellant created.

In support of appellant's contention that he was not guilty of negligence, several authorities are cited, including the following:

In the case of *Grubbs v. Grayson,* 165 Wash. 548, 5 P. (2d) 1033, it was held that the statutory provisions must be reasonably construed, and that these provisions are not violated if, because of necessity, or a proper excuse, an automobile stops upon a highway and has been removed from the traveled portion of the road as completely as circumstances will permit. This case is not in point, as in the case at bar appellant created the dangerous situation by deliberately placing his equipment upon a much traveled highway, after dark, and under such circumstances as necessarily created a most dangerous situation. No emergency existed, and he might easily have allowed his equipment to remain upon the service station premises until daylight, when much of the danger created by moving the equipment onto the paved portion of the highway would have been avoided.

In the case of *Neeley v. Bock,* 184 Wash. 135, 50 P. (2d) 524, it appeared that a truck slowed down or

stopped upon the highway for the purpose of enabling the driver to obtain directions as to the point at which the contents of the truck should be dumped. Such cases as these are not controlling here.

Appellant next argues that the trial court erred in failing to hold that Mr. McVicar was himself guilty of negligence; and that, assuming that appellant was negligent, because of Mr. McVicar's negligence respondent should not be allowed to recover damages. On this phase of the case, appellant cites *Pritchard v. Hockett,* 140 Wash. 499, 249 Pac. 989, in which a judgment of nonsuit was reversed and the case remanded for new trial, it appearing that the defendant, who was driving an automobile, had struck and injured a nine-year-old child who was riding along the street in his coaster. It was held that the plaintiff's evidence made a case which required the defendant to go upon his proof, and *prima facie,* at least, established the defendant's negligence in failing to see the child and avoid striking him.

In the later case of *Barlow v. Dereiko,* 188 Wash. 495, 63 P. (2d) 371, a somewhat similar question was presented, and a judgment rendered in favor of the plaintiff in an action for personal injuries sustained by a child pedestrian as the result of being struck by the defendant's automobile, was affirmed. This court was of the opinion that, by the clear preponderance of the evidence, the appellant driver was proceeding in excess of the lawful rate of speed, and that the trial court's findings of negligence on the part of the appellant were supported by a preponderance of the evidence. These cases are not in point, entirely different questions of fact being presented.

It does not appear that Mr. McVicar was exceeding the speed limit. Appellant argues merely that he

should have seen the trailer in time to stop, or to avoid it by turning his car so as to pass it in safety.

Appellant cites several of our decisions in which it was held that a person who looks in a certain direction must be held to have seen what was there in plain view. These cases are not in point, as, while Mr. McVicar stated that he did not see the trailer in time to stop or avoid it, it cannot be held that, under the existing conditions, the trailer was in plain sight, within the rule laid down in *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784.

Mr. McVicar was proceeding along an arterial highway, apparently at a lawful rate of speed, following several cars. It cannot be held that, in colliding with the trailer, he was guilty of negligence as matter of law.

Mr. McVicar was driving upon his right-hand side of the arterial, where it was his duty to be. Several cars were preceding him, which of course would obstruct his view of anything standing upon the highway and being no higher than appellant's trailer. Just what portion of the highway was occupied by the cars which were ahead of Mr. McVicar, we cannot be certain. From the fact that they successfully avoided striking the trailer, it does not follow that Mr. McVicar was guilty of negligence because he did not succeed in passing it.

Our attention has been called to no case which from its similarity to the facts in the case at bar is particularly helpful in determining the questions here presented.

That such an object as a low trailer would be occupying approximately seven feet of the highway appropriated to southbound traffic, would not be within the bounds of reasonable anticipation on the part of drivers of southbound cars. The trial court found from the

evidence that Mr. McVicar did not see the truck and trailer prior to the instant of collision. The evidence supports this finding. In any event, it is clear that he did not see it in time to avoid running into it. We are convinced that the trial court correctly held that the evidence did not show that Mr. McVicar was guilty of negligent driving.

Judgment confirmed.

ALL CONCUR.